JOSEPH ANSELME, APPELLEE, V. AMERICAN SAVINGS & LOAN ASSOCIATION ET AL., APPELLANTS.*

FILED JANUARY 8, 1902.    No. 10,381.

Commissioner's opinion, Department No. 1.

Building and Loan Association: INSOLVENCY: RECEIVER. Where a building and loan association is insolvent and unable to perform its contracts with its members, and a receiver is appointed to wind up its affairs, it is entitled to recover from a borrowing member the amount of money actually loaned, with interest thereon from date at the legal rate, less the amount paid by the member as interest and premium, with interest from the date of the several payments. Such borrower is not entitled to credit upon his loan for money paid into the association as dues upon the stock.

APPEAL from the district court for Platte county. Tried below before ALBERT, J. Reversed.

Barnes & Tyler, Eugene G. Hay and Harrison & Pearne, for appellants.

McAllister & Cornelius, contra.

DAY, C.

This suit was brought in the district court of Platte county by Joseph Anselme against the American Savings & Loan Association and William D. Hale, receiver of said association, to cancel and satisfy of record a certain mort-

---

*Rehearing allowed.  Judgment below affirmed.

gage given by Anselme to said association. William D. Hale, receiver, filed an answer and cross-petition, praying a foreclosure of said mortgage. The issue raised by the cross-petition and plaintiff's answer thereto presents the real question in the case. In the lower court there was judgment for the plaintiff as prayed, from which the defendant has appealed.

The record discloses that the American Building & Loan Association was organized as a corporation in 1887, under the laws of the state of Minnesota, with its home office at Minneapolis. Subsequently the name of the corporation was changed to the American Savings & Loan Association, under which name it continued to transact business until January 14, 1896, when William D Hale was duly appointed receiver of said association to wind up its affairs. In December, 1888, the plaintiff became a member of said association and subscribed for forty shares of its capital stock. Later he surrendered ten shares, and as they figure in no manner in the present controversy, the matter will be treated as a subscription for thirty shares. On December 26, 1888, said association issued to plaintiff its stock certificate for thirty shares, which was accepted by him upon the terms and conditions therein set forth, and subject to the provisions of the by-laws, by which the plaintiff obligated himself to pay to the association at its home office, in Minneapolis, on the 26th day of each and every month after the date of the certificate, sixty cents per share, as monthly dues upon said stock, until the same should become matured and of the value of $100 per share. The by-laws further provided that its funds could be loaned to its members upon approved real estate security, giving the priority of its loans to such members as would bid the highest premium therefor. On March 8, 1889, the plaintiff made an application for a loan of $1,500 by way of anticipating the value of his 30 shares of stock at their maturity, and bid $1,500 premium. The application was accepted by the association and the amount applied for duly loaned to the plaintiff. To secure the payment of this loan, and to

Anselme v. American Savings & Loan Ass'n.

secure the continued monthly payments of dues upon the shares of stock and the interest payments upon said advancement until such time as the stock should be fully matured, the plaintiff made and delivered to the association his bond for $3,000, dated May 24, 1889, and due and payable on or before nine years from date, $1,500 of which was to draw interest at the rate of six per cent. per annum. The bond provided that if the plaintiff should pay the sum of $18 on the 26th day of each month after the date of his certificate, as monthly dues, and should pay all instalments of interest and all fines which might be assessed or charged against the stock until the same should become matured, the bond and mortgage should become null and void. The plaintiff paid the monthly instalments of dues, aggregating the sum of $1,356, also one interest payment of $2.50 and sixty-five monthly instalments of interest of $7.50 each, aggregating $490.

The important question presented by this case involves a determination of the rule to be invoked in a settlement between a receiver appointed to wind up the affairs of an insolvent building and loan association and its borrowing members. It is conceded that the receiver is not entitled to recover anything on account of the premium bid, for the obvious reason that the inducement held out by the association, that ultimately both loan and premium could be paid by a surrender and cancelation of the stock, could not be carried out by the association. It would be manifestly unjust to consider the premium included in the bond as a part of the assets of the association for the plain reason that it has not been earned. But the money actually received by the borrower is a part of the earned assets of the association, was in its treasury at the time of the loan, and, of course, should be repaid.

It is contended on the part of the plaintiff that he should be given credit upon the amount of money actually received by him for all that he has paid into the association, both as interest on the loan and for monthly dues upon his stock, together with interest thereon from the dates of the several

payments. We do not think this is the correct rule to be applied under the facts as proved in this case. It must be borne in mind that this is a mutual association. The underlying principle of such associations is mutuality of interest. Each member, in proportion to the number of shares held by him, contributes his monthly dues to a common fund and participates in all of the profits, if any are realized, and shares the losses when there are any losses. As we view it, the plaintiff took his chances with all of the members of the association on the gains or losses; and, now that it has turned out disastrously, he ought not to be permitted to be credited upon his loan with the amount he has paid upon his stock. The money paid in upon the stock should be distributed *pro rata* among the members of the association. It is perfectly apparent that the rule contended for by the plaintiff would, in case of insolvency of the association, give a superior advantage to a borrowing member over a non-borrowing member. If the borrowing members are to be credited on their indebtedness to the association with such sums as they have paid in on dues, they suffer none of the impairment, while the loss falls upon the non-borrowing members, and thus the principle of mutuality of burdens is disregarded. The rule which commends itself to our judgment, and is certainly founded upon equitable principles, is that when an association of this character is insolvent and no longer able to carry out its contracts, and a receiver is appointed to wind up its affairs, a borrowing member should be charged with the amount of money actually received by him, with legal interest thereon, and that he should be credited with all payments of interest or premiums, together with interest thereon from the dates of the several payments, but that he is not entitled to credit on his loan for dues paid. This rule is supported by the following authorities: *Weir v. Granite State Provident Ass'n*, 38 Atl. Rep. [N. J.], 643; *Post v. Mechanics' Building & Loan Ass'n*, 97 Tenn., 408, 37 S. W. Rep., 216; *Brown v. Archer*, 62 Mo. App., 277; *Twin Cities National Building & Loan Ass'n v. Le-*

*pore,* 17 Pa. Co. Ct. Rep., 426; *Price v. Kendall,* 36 S. W. Rep. [Tex.], 810; *Strohen v. Franklin Saving & Loan Ass'n,* 115 Pa. St., 273; *Curtis v. Granite State Provident Ass'n,* 36 Atl. Rep. [Conn.], 1023; *Leahy v. National Building & Loan Ass'n,* 76 N. W. Rep. [Wis.], 625. The case of *Hale v. Cairns,* 77 N. W. Rep. [N. Dak.], 1010, is particularly in point, for it involves the affairs of the defendant association in North Dakota. In that case it was said, quoting from the syllabus: "A member of a building and loan association, who borrows money from the association, and bids a premium for the privilege of obtaining the loan, and executes his bond for the amount of the loan and premium, and gives a mortgage to secure the payment of such bond, and also assigns to such association his shares of stock as collateral security for such payment, is not entitled, in an action brought to foreclose such mortgage by the receiver of such association (said association being insolvent), to apply the amounts he has paid as dues upon his stock in reduction of his indebtedness." The views expressed by this court in *Randall v. National Building, Loan & Protective Union,* 42 Nebr., 809, and 43 Nebr., 876, are not in conflict with this opinion. That was a controversy between the association, while it was a going concern, and one of its members; and the question involved was the right to forfeit certain payments made by the member. The court, under the facts shown, held that the association could not do this, and that the member might elect to have the payments on account of his stock applied upon his indebtedness to the association. This rule would not apply where the association was insolvent, and a receiver was winding up its affairs.

The testimony shows that the defendant was a building and loan association organized under the laws of the state of Minnesota, and under the laws of that state the transaction here set out did not come within the law prohibiting the taking of usury. It was agreed that the association had complied with the laws of this state, permitting it, as a foreign building and loan association, to transact busi-

ness within this state. That the contract was a Minnesota contract, is shown by the bond, mortgage, application for the loan and by the evidence showing its method of doing business.

The defendant is entitled to a decree for the sum of $1,500, with interest at seven per cent. from May 24, 1889, upon which should be credited the several payments of interest, as above set forth, with interest thereon from the date of the several payments at seven per cent.

It is therefore recommended that the district court set aside its former judgment in this case, and enter a decree in favor of the defendant upon his cross-petition for the amount as indicated in this opinion, with the usual decree of foreclosure.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reason stated in the foregoing opinion, the judgment is reversed, and the district court directed to enter a decree upon the cross-petition in favor of the defendant and against the plaintiff, in accordance with this opinion.

REVERSED.