Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/09/2024 08:06 AM CST

John Edward Griffith II and Christina M. Griffith,
appellants, v. LG Chem America, Inc., and
Shoemaker's Truck Station, Inc., doing business
as Shoemaker's Shell Travel Center
and E-Titan, LLC, appellees.

___ N.W.2d ___

Filed February 9, 2024.    No. S-22-840.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. **____: ____.** An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

3. **Motions to Dismiss: Jurisdiction: Pleadings: Evidence.** When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion. However, if the court holds an evidentiary hearing on the issue or decides the matter after trial, then the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence.

4. **Jurisdiction: Appeal and Error.** An appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.

5. **Motions to Dismiss: Appeal and Error.** In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.

6. **Limitations of Actions: States.** Nebraska has adopted the Uniform Conflict of Laws Limitations Act, Neb. Rev. Stat. §§ 25-3201 through

25-3207 (Reissue 2016). Under the act, if a claim is based on the substantive law of Nebraska, then Nebraska's statute of limitations will apply. If a claim is substantively based upon the law of another state, however, then the limitation period of the other state will apply.

7. **Courts: Jurisdiction: States.** Before entangling itself in messy issues of conflict of laws, a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.

8. **Jurisdiction: States.** In conflict-of-law analysis, an actual conflict exists when a legal issue is resolved differently under the law of two states.

9. **Torts: Appeal and Error.** To resolve conflicts of law that sound in tort law, courts apply the Restatement (Second) of Conflict of Laws § 146 (1971).

10. **Jurisdiction: States.** When there are no factual disputes regarding state contacts, conflict-of-law issues present questions of law.

11. **Jurisdiction: Words and Phrases.** Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.

12. **Constitutional Law: Due Process: Jurisdiction.** The Due Process Clause of the U.S. Constitution limits a state court's power to exercise jurisdiction over a defendant. It protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties, or relations.

13. **Jurisdiction: States.** The constitutional touchstone for personal jurisdiction over a nonresident is whether the defendant purposefully established minimum contacts in the forum state.

14. **____: ____.** The minimum contacts requirement protects the defendant against litigating in a distant or inconvenient forum and ensures that states do not exceed the limits imposed by their status as coequal sovereigns in a federal system.

15. **Jurisdiction.** There are two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction.

16. **____.** A state court may exercise general jurisdiction only when a defendant is essentially at home in the state.

17. **Jurisdiction: States.** To be subject to specific personal jurisdiction of a state, a nonresident defendant must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum state, and the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum.

18. **Due Process: Jurisdiction: States.** The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the

defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there.

19. ____: ____: ____. The analysis of whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there is not simply mechanical or quantitative, but requires that a court consider the quality and nature of the defendant's activities to ascertain whether the defendant has the necessary minimum contacts with the forum to satisfy due process.

20. **Jurisdiction: Words and Phrases.** For specific personal jurisdiction, there must be a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation.

21. **Jurisdiction: Time.** The requisite minimum contacts must exist either at the time the cause of action arose, at the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.

22. **Jurisdiction: States.** Contacts with the forum state unrelated to the action have no bearing on a specific personal jurisdiction analysis.

23. ____: ____. It is essential to personal jurisdiction that in each case there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

24. ____: ____. There must be fair warning that a particular activity might subject the nonresident defendant to the jurisdiction of the foreign sovereign, giving a degree of predictability to the legal system by allowing potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

25. ____: ____. Unilateral activity of a plaintiff who claims some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Christopher P. Welsh, of Welsh & Welsh, P.C., L.L.O., for appellants.

Mark A. Fahleson, of Rembolt Ludtke, L.L.P., for appellee LG Chem America, Inc.

Matthew V. Rusch, of Erickson | Sederstrom, P.C., L.L.O., for appellee Shoemaker's Truck Station, Inc.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

John Edward Griffith II purchased two lithium-ion rechargeable batteries at a Shoemaker's Shell Travel Center store in Lincoln, Nebraska. Several months later, when he was at his home in Sharpsville, Pennsylvania, the batteries exploded and combusted in his pocket. John Griffith and his spouse, Christina M. Griffith, filed suit in the district court for Lancaster County, Nebraska, against LG Chem, Ltd., the lithium-ion batteries' South Korean manufacturer and distributor; LG Chem America, Inc. (LGCAI), the manufacturer's American distributor; Shoemaker's Truck Station, Inc. (Shoemaker's), the owners of the travel center; and E-Titan, LLC, the owners of an electronic cigarette kiosk from which the batteries were bought.

LG Chem was dismissed for lack of service. The district court determined, inter alia, that the Griffiths' claims for negligence were not timely under Pennsylvania's 2-year statute of limitations for personal injury actions and granted summary judgment and dismissed all claims against Shoemaker's and E-Titan. Subsequently, the district court determined that it lacked personal jurisdiction over LGCAI and dismissed LGCAI. The Griffiths appeal. We affirm.

## STATEMENT OF FACTS

John Griffith purchased two 18650 lithium-ion rechargeable battery cells (18650 batteries) on November 6, 2015, from an electronic cigarette kiosk that was owned and operated by E-Titan and that was located inside the travel center owned by Shoemaker's. E-Titan is a Nebraska corporation with its principal place of business in Grand Island, Nebraska. Shoemaker's is a Nebraska corporation with its principal place of business in Lincoln. The Griffiths allege that the 18650 batteries were designed and manufactured by LG

Chem, a Korean corporation, and distributed by its American subsidiary, LGCAI.

On March 12, 2016, John Griffith was injured while replacing two 18650 batteries in his electronic cigarette. He was carrying the batteries in his pocket when they exploded and burst into flames, resulting in serious burns to his body and other permanent injuries.

On June 27, 2019, the Griffiths filed suit against LG Chem, LGCAI, Shoemaker's, and E-Titan in Nebraska in the district court for Lancaster County. The Griffiths claimed negligence, products liability (defective design and manufacturing defect), breach of warranty, and loss of consortium by Christina Griffith. LG Chem was never served with summons in the district court and, pursuant to Neb. Rev. Stat. § 25-217 (Reissue 2016), was dismissed as a matter of law in December 2019.

*Motion For Summary Judgment Against
Shoemaker's and E-Titan.*

Shoemaker's and E-Titan moved for summary judgment on the basis that the Griffiths' claims against them were time barred under the 2-year limitation period provided by a Pennsylvania statute of limitations regarding personal injury actions. See 42 Pa. Stat. and Cons. Stat. Ann. § 5524(2) (West 2019). In contrast, the Griffiths contended that Nebraska law applied and that their negligence claims were timely filed within Nebraska's 4-year statute of limitations for personal injury actions. See Neb. Rev. Stat. §§ 25-207(3) and 25-224(1) (Reissue 2016).

On October 29, 2020, the district court determined that there was an actual conflict between the laws of Pennsylvania and those of Nebraska. The court noted that the Griffiths' negligence and loss of consortium claims would be barred under Pennsylvania law, but not under Nebraska law. It determined that the claims for negligence are substantively based on Pennsylvania law and that Pennsylvania, as the state where

the injuries occurred, has the dominant interest in the matter and the most significant relationship to the occurrence and the parties. The district court noted that with respect to the breach of warranty claims, the Griffiths conceded that there were no genuine issues of material fact regarding those claims as against Shoemaker's and E-Titan. The court granted the motion for summary judgment and dismissed all claims against Shoemaker's and E-Titan based on the Pennsylvania 2-year statute of limitations.

*Claims Against LGCAI and Challenge*
*to Personal Jurisdiction.*

In the complaint, the Griffiths alleged that the batteries were designed and manufactured by LG Chem, a Korean corporation, and its wholly owned and controlled subsidiary, LGCAI, a Delaware corporation with its principal place of business in Atlanta, Georgia. The complaint alleged that LG Chem is one of the world's leading manufacturers of lithium-ion rechargeable batteries. The Griffiths further alleged that LG Chem and LGCAI, either directly or indirectly or through a wholly owned subsidiary, were engaged in the business of designing, engineering, manufacturing, assembling, testing, inspecting, providing with warnings and instructions, labeling, marketing, distributing, selling, and otherwise putting into the stream of commerce lithium-ion rechargeable batteries that were purchased throughout the United States, including the State of Nebraska. These lithium-ion rechargeable batteries included the 18650 batteries that are the subject matter of the present case. The complaint alleged that LGCAI is one of the principal marketing, sales, and trading subsidiaries for LG Chem in the United States.

According to the record, LGCAI primarily sells and distributes various petrochemical materials and products, including ABS resin, engineered plastic, rubbers, acrylate, super absorbent polymer, and specialty polymers. LGCAI does not have any manufacturing plants, and its business is focused on

sales and distribution. LGCAI uses a warehouse in Nebraska to sell petrochemical materials and products but has never sold or distributed any 18650 batteries in Nebraska. LGCAI has never designed, manufactured, distributed, advertised, or sold any lithium-ion batteries for use by individual consumers as standalone, replaceable rechargeable batteries in electronic cigarettes or vaping devices. LGCAI has never conducted any business with Shoemaker's or E-Titan and has never authorized Shoemaker's or E-Titan to sell or distribute "LG-brand" lithium-ion batteries for any purpose.

In 2015, LGCAI had three customers located in Illinois or Texas for the purchase of lithium-ion batteries, such as the 18650 batteries. When one of the customers issued a purchase order for lithium-ion batteries, LGCAI would purchase the product from LG Chem and then ship it directly to the customer. LGCAI would issue an invoice to the customer, collect payment from the customer, and pay LG Chem. LGCAI did not facilitate the sale of batteries to customers in Nebraska or facilitate the sale of batteries to individuals. LGCAI stopped facilitating the sale of batteries after May 2016.

LGCAI filed a special appearance and a motion to dismiss pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(2) on the grounds that the district court lacked personal jurisdiction over it. On October 17, 2022, after limited jurisdictional discovery and a hearing at which the court received affidavits accompanied by exhibits, the district court found that it lacked personal jurisdiction over LGCAI. The district court acknowledged that there was uncontroverted evidence that LGCAI rented warehouse space in Lincoln to store petrochemical products, LGCAI sold petrochemical products to at least two customers in Nebraska, and LGCAI's logistics team visited the warehouse annually to check inventory. However, the district court found that these contacts were insufficient to confer general or special personal jurisdiction over LGCAI, because its dealings in Nebraska related only to its petrochemical products, not to the sale of 18650 batteries at issue in this case. LGCAI

does not have an office in Nebraska and has no relationship with other companies in Nebraska other than those concerning petrochemical sales.

The district court first determined that the Griffiths did not satisfy their burden of demonstrating that the court had general jurisdiction over LGCAI because LGCAI's activities in the State of Nebraska are not substantial. With respect to specific jurisdiction, it found that LGCAI had not purposefully directed its activities to the residents of Nebraska or, through its actions, purposefully availed itself of the privilege of conducting activities in the state, thereby invoking the benefits and protections of Nebraska laws. The court concluded it lacked specific jurisdiction and could not exercise personal jurisdiction over LGCAI.

The Griffiths appeal.

## ASSIGNMENTS OF ERROR

The Griffiths claim, summarized and restated, that the district court erred when it (1) applied the Pennsylvania statute of limitations and granted summary judgment in favor of Shoemaker's and E-Titan on all claims and (2) dismissed LGCAI as a party for lack of personal jurisdiction.

## STANDARDS OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Rose v. American Family Ins. Co., ante* p. 302, 995 N.W.2d 650 (2023). An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id.*

[3] When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima

facie showing of jurisdiction to survive the motion. *Central States Dev. v. Friedgut*, 312 Neb. 909, 981 N.W.2d 573 (2022). However, if the court holds an evidentiary hearing on the issue or decides the matter after trial, then the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence. *Id*.

[4] An appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo. *Id*.

[5] In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *Id*.

## ANALYSIS

The Griffiths contend that the district court erred when it determined that claims against Shoemaker's and E-Titan were time barred and granted the motion for summary judgment of Shoemaker's and E-Titan. The Griffiths also claim the district court erred when it dismissed claims against LGCAI for lack of personal jurisdiction. As discussed below, we find no merit to these contentions and affirm the rulings of the district court with respect to both issues raised in this appeal.

*The District Court Did Not Err When It Granted Summary Judgment in Favor of Shoemaker's and E-Titan With Respect to Negligence and Loss of Consortium and Dismissed Claims Against Them.*

The Griffiths claim that the district court erred when it applied Pennsylvania's 2-year statute of limitations for negligence, 42 Pa. Stat. and Cons. Stat. Ann. § 5524(2), and determined that the Griffiths' negligence and loss of consortium claims against Shoemaker's and E-Titan were time barred. The district court granted summary judgment in favor of Shoemaker's and E-Titan and dismissed claims against them. The Griffiths do not contest the portion of the order that granted summary judgment in favor of Shoemaker's and

E-Titan on their breach of warranty claims; only the rulings regarding negligence and loss of consortium are before us in this appeal.

[6] Nebraska has adopted the Uniform Conflict of Laws Limitations Act, Neb. Rev. Stat. §§ 25-3201 through 25-3207 (Reissue 2016). Under the act, if a claim is based on the substantive law of Nebraska, then Nebraska's statute of limitations will apply. See Neb. Rev. Stat. § 25-3203(1)(b). If a claim is substantively based upon the law of another state, however, then the limitation period of the other state will apply, including the other state's relevant statutes and rules governing tolling and accrual for computing the limitation period. See §§ 25-3203(1)(a) and 25-3204. We agree with the district court that the Griffiths' negligence-related claims against Shoemaker's and E-Titan are substantively based on Pennsylvania law and were barred by the 2-year limitation period provided by 42 Pa. Stat. and Cons. Stat. Ann. § 5524(2).

[7,8] We have stated that "before entangling itself in messy issues of conflict of laws, a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *In re Estate of Greb*, 288 Neb. 362, 375, 848 N.W.2d 611, 622 (2014). An actual conflict exists when a legal issue is resolved differently under the law of two states. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017).

The parties submit, and we agree, that an actual conflict exists between the laws of Nebraska and Pennsylvania in this case. Pennsylvania limits actions involving personal injury to those filed within 2 years after the cause of action accrues. See 42 Pa. Stat. and Cons. Stat. Ann. § 5524(2). In contrast, Nebraska requires that personal injury actions be brought within 4 years of the accrual of the cause of action. See §§ 25-207(3) and 25-224(1). Because the Griffiths filed this suit on June 27, 2019, more than 2 years after John Griffith was injured on March 12, 2016, an actual conflict arises

because the negligence claims that would have been timely under Nebraska law would be barred under Pennsylvania law.

[9] When, as here, the action in which the conflict of law arises sounds in tort law and alleges personal injury caused negligently, we apply the general rule from the Restatement (Second) of Conflict of Laws § 146 at 430 (1971) that "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship." The question of whether some other state has a more significant relationship to the occurrence and the parties will depend largely on whether some other state has a greater interest in the determination of the particular issue than the state where the injury occurred. Restatement, *supra*, § 146, comment *c*.

The Restatement (Second) of Conflict of Laws § 145 at 414 (1971) sets forth what we have called the "most significant relationship" test to determine whether a state other than the one where the injury occurred has a more significant relationship to the occurrence and the parties. See *O'Brien v. Cessna Aircraft Co., supra*; Restatement (Second) of Conflict of Laws § 6(2) (1971). Under the most significant relationship test, the factors, or contacts, are "to be evaluated according to their relative importance with respect to the particular issue" and include: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. Restatement, *supra*, § 145(2) at 414. We have emphasized that under the most significant relationship test, courts should not assign each contact equal weight and employ a mechanical approach. See *O'Brien v. Cessna Aircraft Co., supra*. The significance of each contact analyzed in § 145(2) is evaluated according to the following principles relevant to the applicable rule of law:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement, *supra*, § 6(2) at 10. With tort claims, the more relevant principles under § 6(2) tend to be subsections (a), (b), (c), and (g). Restatement, *supra*, § 145, comment *b*. See *Malena v. Marriott International*, 264 Neb. 759, 651 N.W.2d 850 (2002).

The district court noted that there is no dispute in the record that John Griffith was injured in Pennsylvania at his residence while using 18650 batteries. In accordance with the presumption that the law of the place of injury applies, the district court placed greater significance on the contact between the injury and Pennsylvania. See Restatement, *supra*, §§ 145(2)(a) and 146.

The district court next considered the remaining contacts under § 145(2). With respect to the second consideration, it found that that neither Pennsylvania nor Nebraska had a particularly significant relationship with the conduct that caused the injury, which it determined was the place where the allegedly defective batteries were designed, marketed, or manufactured. The Griffiths claim that the 18650 batteries were sold out of E-Titan's kiosk at Shoemaker's travel center in Nebraska, but there is no evidence that the 18650 batteries were designed and manufactured in Nebraska or by Shoemaker's or E-Titan. The complaint alleged that the 18650 batteries were designed and manufactured by LG Chem, a Korean corporation with its principal executive

offices in South Korea, and LG Chem's American subsidiary, LGCAI. The 18650 batteries exploded when John Griffith placed them in his pocket in Pennsylvania, causing them to come into contact with each other.

With respect to the third consideration, i.e., the importance of the parties' domicile, residence, nationality, place of incorporation, and place of business, the district court found that Griffiths' residence in Pennsylvania could be grouped with the place of injury and was particularly likely to be the state of applicable law. See Restatement (Second) of Conflict of Laws § 145, comment *e.* (1971).

Analyzing the fourth factor in § 145(2), the district court noted that before the batteries exploded and John Griffith was injured, the parties lacked any prior relationship, as is often typical with cases of personal injuries resulting from alleged defective products. See, e.g., *Crisman v. Cooper Industries*, 748 S.W.2d 273 (Tex. App. 1988).

Finally, the district court balanced the above factors with the principles of conflicts of law and the policies of the forum state and the other interested state, and their interests in determining the particular issues in the case. See Restatement, *supra*, § 6. The court observed that Nebraska's only contact with the events giving rise to this case was the purchase of the 18650 batteries. The district court noted that Pennsylvania's contacts are more substantial than those of Nebraska. Pennsylvania was the state where the product was being used at the time of the injury, the state where the injury occurred, and the state where the Griffiths had a settled relationship as residents. See Restatement, *supra*, § 146, comment *e.* (explaining that law where injury occurred is more likely to apply when injured person has settled relationship to that state).

Each state has a policy interest in applying its tort rules to personal injury claims by residents who were injured within its borders. See, *Malena v. Marriott International, supra*; Restatement, *supra*, § 145 comment *c*. However, state tort

rules that limit liability are entitled to the same consideration in the choice-of-law process as other states' rules that impose liability. *Malena v. Marriott International, supra.* Numerous contacts in this case support Pennsylvania's strong interest in applying its tort rules, including its statute of limitations, to the Griffiths' personal injury action that, as we have noted, was based on an incident occurring in Pennsylvania to one of its residents. We agree with the district court's determination that Pennsylvania has the dominant interest in this matter and has the most significant relationship to the occurrence and the parties. Having found the claim was substantively based in Pennsylvania, the district court found Pennsylvania law should be applied. See § 25-3203(1)(a).

[10] When there are no factual disputes regarding state contacts, conflict-of-law issues present questions of law. *Johnson v. United State Fidelity & Guar. Co.*, 269 Neb. 731, 696 N.W.2d 431 (2005). There are no facts in dispute on the issue of the limitation period applicable to the Griffiths' personal injury claims against Shoemaker's and E-Titan in this case. After reviewing the evidence in the record in a light most favorable to the Griffiths, and applying the Restatement factors set forth above, we reject the Griffiths' argument that Nebraska has the dominant interest in the determination of the statute of limitations issue.

We agree with the district court that the significant contacts between Pennsylvania and the Griffiths and their injuries favor applying Pennsylvania law. Applying the Pennsylvania 2-year statute of limitations provided by 42 Pa. Stat. and Cons. Stat. Ann. § 5524(2), the Griffiths' claims were untimely filed and are time barred. The district court did not err when it granted summary judgment in favor of Shoemaker's and E-Titan and dismissed them on this basis.

*The District Court Correctly Ruled That It Lacked*
*Personal Jurisdiction Over LGCAI.*

LGCAI filed a motion to dismiss for lack of personal jurisdiction under Neb. Ct. R. Pldg. § 6-1112(b)(2). The district

court sustained the motion and dismissed LGCAI. The Griffiths claim the district court erred in so ruling; we disagree.

The Griffiths contend that the district court disregarded certain activities by LGCAI that established specific personal jurisdiction. As we explain below, the Griffiths failed to carry their burden to establish contacts between Nebraska and LGCAI that sufficiently relate to their suit.

[11] We begin by setting forward the applicable principles of law. Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions. *Wheelbarger v. Detroit Diesel*, 313 Neb. 135, 983 N.W.2d 134 (2023). Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2016), confers personal jurisdiction over nonresidents to the fullest extent constitutionally permitted, so we must determine whether LGCAI had sufficient minimum contacts with Nebraska so that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. See *Wheelbarger v. Detroit Diesel, supra*.

[12-14] The Due Process Clause of the U.S. Constitution limits a state court's power to exercise jurisdiction over a defendant. See *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, ___ U.S. ___, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021). It protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties, or relations. *Wheelbarger v. Detroit Diesel, supra*. The constitutional touchstone for personal jurisdiction over a nonresident is whether the defendant purposefully established minimum contacts in the forum state. *Id*. The minimum contacts requirement protects the defendant against litigating in a distant or inconvenient forum and ensures that states do not exceed the limits imposed by their status as coequal sovereigns in a federal system. *Id*.

[15,16] There are two kinds of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co.*

*v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. at 1024. See *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011). A state court may exercise general jurisdiction only when a defendant is "'essentially at home'" in the state. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. at 1024. For a corporation, its place of incorporation and principal place of business ordinarily establish general jurisdiction. *Id*. The Griffiths do not claim that Nebraska may exercise general jurisdiction over LGCAI. In any event, general jurisdiction is not supported by the record that shows, inter alia, that LGCAI is incorporated in Delaware with its principal place of business in Atlanta.

[17] Specific jurisdiction (the only type at issue in this case) covers defendants less intimately connected with a state, but only as to a narrower class of claims. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, supra*. Specific jurisdiction "is different" from general jurisdiction and can be exerted over a defendant only in a particular case. *Id*., 141 S. Ct. at 1024. As discussed below, to be subject to specific personal jurisdiction, a nonresident defendant must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum state, and the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, supra*. In other words, there must be an affiliation between the forum and the underlying controversy. *Wheelbarger v. Detroit Diesel*, 313 Neb. 135, 983 N.W.2d 134 (2023). See *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, supra*.

[18-20] We have said that the benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there. *Wheelbarger v. Detroit Diesel*, 313 Neb. 135, 983 N.W.2d 134 (2023). For example, the forum state can assert specific personal jurisdiction if a nonresident

corporation continuously and deliberately exploited the forum state's market and must reasonably anticipate the potentiality of defending actions based on products causing injury there. See *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, supra*. This analysis is not simply mechanical or quantitative, but requires that we consider the quality and nature of the defendant's activities to ascertain whether the defendant has the necessary minimum contacts with the forum to satisfy due process. *Wheelbarger v. Detroit Diesel, supra*. For specific personal jurisdiction, there must be a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation. *Id*.

[21,22] The requisite minimum contacts must exist either at the time the cause of action arose, at the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit. *Id*. Contacts with the forum state unrelated to the action have no bearing on a specific personal jurisdiction analysis. See *id*. In this regard, we note that the U.S. Supreme Court recently rejected a strict causation-only approach that had been employed by some jurisdictions and reiterated that the relationship among the defendant, the forum, and the litigation must be close enough to support specific personal jurisdiction such that the claims arise out of or relate to the defendant's contacts with the forum. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, ___ U.S. ___, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021).

[23-25] It is essential to specific personal jurisdiction that in each case there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Wheelbarger v. Detroit Diesel, supra*. This requirement ensures that a defendant will not be subject to litigation in a jurisdiction solely due to random, fortuitous, or attenuated contacts. *Id*. There must be fair warning that a particular activity might subject the nonresident defendant to the jurisdiction of the foreign sovereign, giving a degree of

predictability to the legal system by allowing potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *Id*. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Unilateral activity of a plaintiff who claims some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. *Wheelbarger v. Detroit Diesel, supra*.

We have reviewed the record and determine that the Griffiths are unable to identify contacts between LGCAI and Nebraska that are sufficiently related to the operative facts of the complaint. The 18650 batteries were shipped directly from South Korea, and LGCAI did not have physical possession of and did not participate in the distribution of the 18650 batteries in Nebraska. Although LGCAI participated in sales of petrochemicals, it does not generate other revenue in Nebraska. LGCAI has not contracted for business with Shoemaker's or E-Titan and has not initiated the sale of the 18650 batteries for electronic cigarettes or vaping devices. In our view, LGCAI's acts do not satisfy the "relatedness" requirement of *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, supra*. In contrast, because, inter alia, LG Chem and LGCAI shipped its 18650 batteries to customers located in Texas, the Texas Supreme Court found that a consumer's claims were sufficiently related to LGCAI's contacts with Texas to satisfy due process for the exercise of personal jurisdiction. *LG Chem America, Inc. v. Morgan*, 670 S.W.3d 341 (Tex. 2023).

The Griffiths emphasize that LGCAI rents warehouse space in Nebraska as part of its sales of petrochemical materials and products, such as rubber. No LGCAI employees work at the warehouse, and a third-party distributor delivers products from the warehouse to the customer when such petrochemical sales occur. The record suggests that at least two customers in Nebraska bought rubber products from LGCAI. However, LGCAI's petrochemical sales and activities associated with

distribution of other products were not related to LG Chem's sale of the 18650 batteries involved in this suit and are not enough to create a substantial connection of LGCAI to Nebraska for purposes of satisfying due process.

In this case, the Griffiths have not demonstrated specific relatedness of LGCAI's contacts with Nebraska and this lawsuit to satisfy due process to support the exercise of personal jurisdiction. Accordingly, LGCAI was properly dismissed as a party.

## CONCLUSION

For the reasons recited above, we determine that the Griffiths' negligence and loss of consortium claims against Shoemaker's and E-Titan are substantively based in Pennsylvania and that its rules for limitation on actions are applicable. Applying Pennsylvania's 2-year limitation period for actions for personal injury, the Griffiths' claims against Shoemaker's and E-Titan are untimely. Summary judgment was properly granted with respect to these claims. We further determine that the district court did not err when it concluded that it lacked personal jurisdiction over LGCAI. Accordingly, we affirm the rulings of the district court.

AFFIRMED.